IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>CAPWEALTH ADVISORS, LLC *et al*<br><br>    Defendants. | Case No. 3:20-cv-01064<br><br>Judge Waverly D. Crenshaw Jr./Magistrate Judge Jeffrey S. Frensley<br><br>JURY DEMAND |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The defendants CapWealth Advisors, LLC ("CapWealth"), Timothy J. Pagliara, and Timothy R. Murphy, submit this Memorandum in support of their Motion to Dismiss for Failure to State a Claim.

### BACKGROUND

This case lacks merit both legally and factually. This Memorandum focuses on the numerous legal deficiencies of the Complaint. In their Complaint, the Staff of the Securities and Exchange Commission (the "SEC") attempts unsuccessfully to circumnavigate several legal obstacles to their case, including (a) that CapWealth was permitted by law to disclose, and did adequately disclose, material information to its clients during in-person meetings and (b) that there can be no conflict of interest as a matter of law under Section 206 of the Investment Advisers Act of 1940 because the *de*

*minimus* 12b-1 fees clients paid to offset their standard advisory fees neither caused any economic harm to the clients nor created any economic incentive to CapWealth that could even remotely be considered an actual or apparent "conflict of interest" under the securities laws. The SEC's efforts to dodge these fatal deficiencies fail as a matter of law and its Complaint should be dismissed.

The SEC filed this action on December 11, 2021. The Complaint asserts two violations of the Investment Advisers Act of 1940, 15 U. S. C. § 80b (the "Advisers Act"). Count I of the Complaint (Dkt. 1, p. 24) alleges that the individual defendants, investment advisors Timothy J. Pagliara ("Pagliara") and Timothy R. Murphy ("Murphy'), violated Section 206(2) of the Advisers Act [15 U. S. C. § 80b-6(2)] by purportedly failing to disclose adequately "all material facts," including "actual or potential conflicts of interest" (Dkt. 1 ¶¶ 63-86) and by purportedly failing to obtain "best execution" for its client by investing them in mutual fund share classes that charged 12b-1 fees when so-called "more favorable" share classes were available to clients. (*Id.* 87-93) Count II of the Complaint (*Id.* p. 25) alleges that the entity defendant, CapWealth Advisors, LLC ("CapWealth") violated Section 206(4) of the Advisers Act [15 U. S. C. §80b-6(4)] and Rule 206(4)-7 thereunder [17 C. F. R. §275.206(4)-7] by purportedly "failing to adopt and implement written policies

and procedures reasonably designed to prevent violations of the Advisers Act."[1] (Id. ¶94) The SEC seeks the remedy of disgorgement against the individual defendants and civil fines against all defendants. (*Id.* pp. 26, 27) The SEC also seeks a permanent injunction enjoining the individual defendants "from violating, directly or indirectly, Section 206(2) of the Advisers Act [15 U. S. C. § 80b-6(2)]" and a permanent injunction enjoining CapWealth "from violating, directly or indirectly, Section 206(4) of the Advisers Act [15 U. S. C. §80b-6(4) and 17 C. F. R. §275.206(4)-7]." (*Id.* p. 26)

Both counts fail to state a claim under existing law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Count I fails to state a claim because the SEC has failed adequately to allege that the totality of the disclosures made to investors, including the in-person disclosures Pagliara and Murphy made to their clients, violated Section 206(2). Count I also fails to allege that any purported failure to obtain "best execution" was material. The *de minimis* 12b-1 fees that CapWealth received were immaterial to clients because clients suffered no financial detriment.

---

[1] Although the SEC has denominated both counts as "fraud," neither claim requires a showing of scienter. *Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963). The Complaint does not, as Fed. R. Civ. P. 9(b) requires, allege any fraud with particularity. Thus, although the SEC has smeared the reputation of defendants by publicly asserting claims labelled as "fraud", it is actually pursuing a negligence action based upon an alleged failure to disclose.

Count II fails to state a claim because the claim impermissibly seeks an "obey the law" injunction. Numerous federal courts have held such injunctions to violate Fed. R. Civ. P. 65(d)'s requirement that an injunction be specific in its terms. For these reasons this Court should dismiss the Complaint for failure to state a claim.

## STANDARD OF REVIEW

"[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Assoc.*, 714 F.3d 920, 924–25 (6th Cir.2013) (internal quotations and citations omitted). *See also Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016). (to survive a motion to dismiss, a claim must be plausible after the complaint is construed in plaintiff's favor and the well-pleaded factional allegations are accepted as true.). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "While the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

Documents attached to a motion to dismiss may be considered part of the pleadings if they were incorporated into the complaint by reference and are central to the plaintiff's claim. *Blanch v. Trans Union, LLC*, 333 F.Supp.3d 789, 791-92 (M.D. Tenn. 2018)(*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); and *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 79 F.Supp.3d 753, 761 (M.D. Tenn. 2015)).

## ARGUMENT

### I. COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM.

#### A. The Complaint Fails Adequately To Allege a Failure to Disclose.

The law is well established, and the SEC itself has admitted, that an investment advisor's compliance with the duty of disclosure under Section 206(2) is necessarily determined by an examination of all the disclosures – written ***and*** oral –an advisor has made to an investor on a given subject. In

*Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Release No. IA-5248, at 27 n.68 (June 5, 2019)(Appendix 1 hereto), the SEC stated that the Form ADV is not the only means by which an advisor may discharge his duty to disclose under Section 206. An advisor also may discharge such duty in-person or in other written disclosures to clients. The SEC wrote:

> ***We do not interpret an adviser's fiduciary duty to require that full and fair disclosure or informed consent be achieved in a written advisory contract or otherwise in writing***. For example, an adviser could provide a client full and fair disclosure of all material facts relating to the advisory relationship as well as full and fair disclosure of all conflicts of interest which might incline the adviser, consciously or unconsciously, to render advice that was not disinterested, through ***a combination of Form ADV and other disclosure*** and the client could implicitly consent by entering into or continuing the investment advisory relationship with the adviser.

(emphasis added) Yet here, all that the SEC has alleged is that defendants' written disclosures failed to comply with Section 206(2). Specifically, the SEC has alleged:

> 64. Defendants' duty to disclose all material facts includes a duty to tell clients about all actual or potential conflicts of interest that might incline CapWealth and its representatives to render investment advice that is not disinterested, and how those conflicts could affect the advice provided to Defendants' advisory clients.
>
> 65. Defendants were required to provide their advisory clients with disclosure sufficiently specific for the clients to understand the conflicts of interest concerning Defendants' advice about their investments in different classes of mutual funds and to have an informed basis for consenting to or rejecting conflicts of interest.

> 66. Defendants failed to adequately disclose these conflicts of interest *in any of the disclosure documents provided to advisory clients,* including CapWealth's Forms ADV or the IMAs provided to clients.

Dkt. 1 (Complaint), ¶¶ 64-66. (emphasis added)

With respect to Pagliara and Murphy, the Complaint alleges that they "failed to disclose adequately the conflicts of interests to [their] advisory clients" in their "individual Forms ADV Part 2B Brochure Supplement" or "management agreement[s]." Dkt. 1 (Complaint), ¶¶ 9, 11. Alleging that there was a failure to disclose in "documents" is insufficient as a matter of law. In order to survive a motion to dismiss, the SEC must allege that there was a failure to disclose the information *in any manner*. The SEC cannot skirt this requirement.

The SEC, artfully, has avoided an allegation that Pagliara and Murphy failed to disclose all relevant, material facts to investors in-person because the SEC knows that it cannot make such an allegation consistent with Fed. R. Civ. P. 11. During its exhaustive, intrusive and oppressive twelve (12) month investigation into CapWealth's share class selection practices, the SEC specifically learned that Pagliara and Murphy met individually with each and every investor whose portfolio includes shares of mutual funds and that both fully and adequately disclosed in-person all material facts to the investors with respect to the purchase of mutual funds during these face-to-face meetings with clients. The SEC harassed investor after investor during its investigation

yet could not find a single investor to support its outlandish claims that Pagliara and Murphy "defrauded" any of them.

Although the SEC has omitted any reference to its failed investigatory efforts in its Complaint, it cannot—as it attempts to do—predicate a claim under Section 206(2) on just a subset of written disclosures when it knows that defendants made adequate disclosures in-person to each client. To state a claim of fraud based upon allegedly inadequate disclosures under Section 206(2), the SEC must allege that the totality of the disclosures defendants made to their clients, including the in-person disclosures made to each investor, violated Section 206(2). Count I of the Complaint fails to make such an allegation and therefore should be dismissed.

## B. The Complaint Fails Adequately To Allege a Claim for "Best Execution Failures."

### 1. "Best Execution" Has Nothing To Do with Mutual Fund "Share Class Selection Practices."

The SEC claims that CapWealth's "share class selection practices" violated its duty of "best execution." (Dkt. 1 (Complaint) at 21.) No court has ever held that Section 206 imposes a duty to seek to obtain best execution in the context of mutual fund share class selection.

The duty of "best execution" concerns an adviser's *selection of broker-dealers* to execute securities transactions. As the SEC has recognized, because "the determinative factor [in an adviser's best execution analysis] is not the

lowest possible commission cost but whether the transaction represents the best qualitative execution for the managed account[,] [a]dvisers should… periodically and systematically evaluate the *execution quality of broker-dealers executing their clients' transactions.*" *Compliance Issues Related to Best Execution by Investment Advisers* (July 11, 2018)(Appendix 2).

The SEC has recognized that the duty of "best execution" relates to the selection of broker-dealers. In settled actions related to mutual fund share class selection, the SEC repeatedly and consistently has cited to a 1986 release (*Interpretive Release Concerning the Scope of Section 28(e) of the Securities Exchange Act of 1934 and Related Matters* at 9, Release No. 23170 (Apr. 23, 1986), 51 Fed. Reg. 16004, 16011 (Apr. 30, 1986) that discusses at length "factors considered in *selecting broker-dealers"* in determining best execution (emphasis added).[2] In settled actions, the SEC also has cited to *In re Fidelity Management Research Company*, Release No. 2713 (March 5, 2008), a settlement order regarding alleged violations of best execution by Fidelity

---

[2] *See, e.g.*, *In re Manarin Investment Counsel, Ltd., Manarin Securities Corp., and Roland R. Manarin* at ¶ 10, Release No. 9462 (Oct. 2, 2013); *In re Everhart Fin. Gr. Inc., Richard Scott Everhart, & Matthew James Romeo* at ¶ 16, Release No. 76897 (Jan. 14, 2016); *In re Credit Suisse Sec. (USA) LLC* at ¶ 21, Release No. 80373 (Apr. 2, 2017); *In re Suntrust Investment Services Inc.* at ¶ 19, Release No. 81611 (Sept. 14, 2017); *In re Cadaret, Grant & Co., Inc.* at ¶ 21, Release No. 81274 (Aug. 1, 2017); *In re PNC Invs. LLC* at ¶ 20, Release No. 83004 (Apr. 6, 2018); *In re First Western Advisors* at ¶ 11, Release No. 83934 (Aug. 24. 2018); *In re Harbour Invs. Inc.* at ¶ 13, Release No. 84115 (Sept. 13, 2018); *Capital Analysts, LLC* at ¶ 18, Release No. 5009 (Sep. 14, 2018); *In re American Portfolios Advisors, Inc.* at ¶ 12, Release No. 5083 (Dec. 20, 2018); *In re Thoroughbred Fin. Servs. LLC* at ¶ 17, Release No. 84918 (Dec. 21, 2018); *In re PPS Advisors, Inc.* at ¶ 14, Release No. 5084 (Dec. 20, 2018).

traders who "allowed their receipt of travel, entertainment and gifts from brokers and their family or romantic relationships with brokers to influence their *selection of brokers* to handle Fidelity's securities transactions."[3]

Other factors relevant to best execution, including "trading characteristics of the security, speed of execution, clearing costs, and the cost and difficulty of executing an order in a particular market," further evidence that the duty of best execution does not apply to the selection of a mutual fund share class. *Newton* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 271, n.2 (3d Cir. 1998). None of these factors is applicable to the selection of mutual fund share classes. Mutual funds are purchased and sold at Net Asset Value ("NAV") following the close of business daily. Execution price is not available until the fund reconciles daily activity on purchase and sales to reflect gain and loss of transactions executed during trading hours on the day the order is entered. The price of execution at NAV is the *same* for every share class within the fund. The expenses attached to the share class vary on the day

---

[3] *In re Everhart Fin. Grp. Inc., Richard Scott Everhart, & Matthew James Romeo* at ¶ 16, Release No. 76897 (Jan. 14, 2016); *In re Cadaret, Grant & Co., Inc.* at ¶ 21, Release No. 81274 (Aug. 1, 2017); *In re Geneos Wealth Mgmt. Inc.* at ¶ 18, Release No. 83003 (Apr. 6, 2018); *In re Sec. Am. Advisor, Inc.* at ¶ 12, Release No. 4876 (Apr. 6, 2018); *In re Sigma Planning Corp.* at ¶ 21, Release No. 87029 (Sept, 19, 2019); *In Re BMO Harris Fin. Advisors Inc. & BMO Asset Mgmt. Corp.* at ¶ 21, Release No. 87145 (Sept. 27, 2019); *In re Founders Fin. Sec. LLC* at ¶ 12, Release No. 87177 (Sept. 30, 2019); *In re Mid Atlantic Fin. Mgmt. Inc.* at ¶ 12, Release No. 5387 (Sept. 30, 2019); *In re BPU Inv. Mgmt. Inc.* at ¶ 11, Release No. 88202 (Feb. 13, 2020); *In re U.S. Bancorp Invs. Inc.* at ¶ 13, Release No. 88976 (June 1, 2020); *In re William Vescio* at ¶ 22, Release No. 10789 (June 2, 2020).

*following* execution to include other expenses including the assessment of 12b-1 fees.

Because "best execution" has nothing to do with mutual fund share class selection, the SEC's claim in Count I that defendants "share class selection" practices violated defendants' duty of best execution should be dismissed.

### 2. The Complaint Fails To Allege the Materiality of any "Best Execution Failures."

Claims under "Section 206(1)-(2) of the Advisors Act require the alleged misstatement or omissions to be material." *S.E.C. v. Mannion*, 789 F.Supp.2d 1321, 1340 (2011). The SEC has alleged that the "disclosure failures" that form part of Count I of the Complaint were material, but the Complaint fails to allege that any purported failure to obtain best execution was material. The absence of such an allegation, though fatal to the SEC's claim, is not surprising: during the relevant time period, Pagliara and Murphy are alleged to have generated only $6,800 in revenue, or .00037285% of CapWealth's total revenue over the relevant time period (See Motion Ex. 2)[1], due to these alleged failures.

"Alleged misrepresentations [that] present or conceal such insignificant data that, in the total mix of information, [ ] simply would not matter to a

---

[1] Because the SEC has made CapWealth's records of its very modest 12b-1 revenue during the relevant period integral to its claims, this Court may properly consider those records in determining whether the Complaint has adequately states the materiality of an alleged "best execution failures." *See* discussion *infra* at 5.

reasonable investor" can be immaterial as a matter of law. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997). In *Parnes*, a case alleging that defendants committed securities fraud, the Eighth Circuit agreed with the district court's holding that "the Defendants' alleged overstatement of assets by $6.8 million was immaterial as a matter of law" because "*[t]aken in context*, this amount represented only 2% of Gateway's total assets" and "a reasonable investor, faced with a high-risk/high-yield investment opportunity in a company with a history of very rapid growth, would not have been put off by an asset column that was 2% smaller." *Id.* (emphasis added). *See also In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 161 (S.D.N.Y. 2003), aff'd, 113 F. App'x 427 (2d Cir. 2004) (Dismissing complaint where "[i]nflation of $217 million in the Company's revenues for the relevant period amount[ing] to about 0.3% of Duke Energy's total revenues for that period— [was] an immaterial percentage as a matter of law.").

In Paragraph 90 of the Complaint, the SEC alleges that Pagliara and Murphy over a three-year period (2016-2018) generated a paltry $3,500 by placing fifty (50) client accounts in the F1 share class of American Funds' Fundamental Investors mutual fund. The Court read that correctly. The SEC has sued two highly reputable investment advisors and accused them of "fraud" because, according to the SEC, they generated *$3,500* more in 12b-1 revenue from 50 client accounts over a period of three years than the SEC's

thinks they should have. Otherwise stated, the SEC has sued Pagliara and Murphy for fraud based upon "best execution failures" that generated $23.33 more per year per account than SEC Staff thought was appropriate. This claim does not show materiality; it shows absurdity and an utter disrespect for the Court's busy docket.

The same is true of the SEC's claim in paragraph 93 of the Complaint. There, the SEC alleges that Pagliara and Murphy fraudulently generated $3,300 more in 12b-1 revenue from 45 client accounts over the same 3-year period by placing such clients in the F2 share class of American Funds' New Perspective mutual fund. Otherwise stated, according to the SEC, Pagliara and Murphy's alleged "best execution failures" bilked their clients out of $24.44 per account per year.

Because the SEC has failed to allege an essential element of its claim, these claims for "best execution failures" should be dismissed.

## II. COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM.

### A. The SEC's Claimed "Compliance Deficiencies" Are without Legal Support.

To support its claim against CapWealth under Section 206(4) of the Investment Advisers Act for "compliance deficiencies," the SEC claims that CapWealth failed (a) to adopt and implement written policies and procedures regarding "best execution," (b) to review prospectus materials on a regular basis to assess whether a client position in a particular share class should be

4840-4804-1947.1

13

Case 3:20-cv-01064 Document 15 Filed 02/11/21 Page 13 of 18 PageID #: 179

converted to a different share class, and (c) to disclose conflicts of interest in the context of mutual fund share class selection and 12b-1 fees." Dkt. 1 (Complaint) ¶¶ 95, 97 and 98. Each of the SEC's claims, however, lacks legal support.

First, as demonstrated *supra*, the SEC's legal position concerning best execution is contrary to existing law. Second, there is no legal standard that requires an investment advisor to review the prospectus materials of all mutual funds on a regular basis to determine whether a client should be converted to a different fund or to a different share class within a fund. The SEC simply invents such duty *ex nihilo* and then retroactively seeks to impose it on CapWealth.

Finally, the SEC claims that CapWealth failed to apply the conflicts policy set out in its Policies and Procedure Manual to the selection of mutual fund share classes. CapWealth's Policies and Procedures Manual (Motion Ex. 1), which this Court is able to consider on a Rule 12(b)(6) motion as a document integral to plaintiff's claim (*see* discussion *supra* 5), plainly lays out a comprehensive, robust disclosure regarding conflicts of interest. (*Id.* at 52-61) There is no disclosure in the manual regarding conflicts in the selection of mutual fund share classes because no such conflict existed.

As Dr. Jonathan Macey, the Sam Harris Professor of Corporate Law, Corporate Finance, and Securities Law at Yale Law School and a

distinguished, nationally recognized authority on federal securities laws has stated:

> In the case of CapWealth, the conflicts of interest posed by the sale of mutual funds with multiple classes were avoided altogether because CapWealth's investment advisers, unlike all of the other investment advisers whose disclosures have been targeted in this enforcement initiative, had no financial incentive to select a higher cost share class that paid a 12b-1 fee, since those very fees were returned to the customer in the form of a reduction in the standard (one percent) advisory fee charged to the customers paying the 12b-1 fees.

(Appendix 3 at ¶ 15) Otherwise stated, when the Court looks at CapWealth's Policies and Procedures Manual and the other documents provided to the SEC during its investigation, all of which are integral to its claim, it is clear that the conflict of interest the SEC claims CapWealth should have disclosed did not even exist. Plainly, the SEC cannot sue CapWealth for failing to make a disclosure that, if made, would itself be false and misleading.

Accordingly, each of the SEC's alleged "compliance failures" fails to state a claim for which relief may be granted.

### B. Well Established Legal Precedent Bars the "Obey the Law" Injunction the SEC Seeks.

The remedy the SEC seeks to redress CapWealth's alleged violation of Section 206(4) is "[a] permanent injunction enjoining Defendant CapWealth from violating, directly or indirectly, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7]." Dkt. 1 at 26. In other words, the SEC requests that this Court direct

CapWealth to obey the law. The law is clear that injunctions that do nothing more than tell a defendant to obey a law that the defendant is already obligated to follow is impermissible under Fed. R. Civ. P. 65(d). Indeed, because these types of "obey-the law" injunctions provide defendants with "little guidance on how to conform [their] conduct to the terms of the injunction," courts are "skeptical" of the utility of this kinds of injunctions. *SEC v. Tourre*, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) (denying the SEC's request for injunctive relief); *see also SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012) ("[W]e [have gone] out of our way to condemn [obey-the-law] injunctions because they lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation of the securities laws.").

Under Rule 65(d), "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; ***shall be specific in terms***; ***[and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained***." Fed. R. Civ. P. 65(d)(emphasis added). "This specificity requirement is necessary 'to protect those who are enjoined by informing them of what they are called upon to do or to refrain from doing in order to comply with the injunction or restraining order.'" B*urton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999)(quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir.1996) (quoting 11A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, Federal Practice and Procedure § 2955 (2d ed.1995) An injunction must "contain an operative command capable of enforcement.' " *Id.* (quoting *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 73–74, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967)). In *Payne v. Travenol Labs., Inc.,* 565 F.2d 895 (5th Cir.1978), the court invalidated an injunction for failure to satisfy Rule 65(d)'s specificity requirement. That Court reasoned that where the terms of the injunction are as general as the statute itself, the injunction does no more than instruct a defendant to "obey the law." *Id.* at 898. A court is incapable of enforcing so broad and vague an injunction. See B*urton,* 178 F.3d at 1200.

As the Second Circuit explained in *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001):

> Under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law. To comply with the specificity and clarity requirements, an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed. This rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure 'that the appellate court knows precisely what it is reviewing. (internal quotations omitted)

Because the only remedy the SEC seeks against CapWealth is legally prohibited, its claims should be dismissed.[2]

---

[2] The requested injunction is also moot because, as the SEC is well aware, CapWealth shut down its introducing broker-dealer in June 2018 and no longer receives any 12b-1. (*See* Motion Ex. 3, pp. 2, 6)

4840-4804-1947.1

17

## CONCLUSION

For the foregoing reasons, this Court should grant defendants' Motion to Dismiss for Failure to State a Claim in all respects.

Respectfully submitted,

s/ Eugene N. Bulso Jr.
Eugene N. Bulso, Jr. (BPR No. 12005)
BULSO PLC
155 Franklin Rd., Suite 400
Brentwood, TN 37027
Tel: (615) 913-5135
gbulso@bulso.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing is being filed via the Court's ECF system, which is expected to deliver a copy by electronic means to the following on this 11th day of February 2021:

M. Graham Loomis
Kristin W. Murnahan
Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E.,
Suite 900
Atlanta, GA 30326-1382
*Attorneys for Plaintiff*

s/Eugene N. Bulso, Jr.
Eugene N. Bulso, Jr.