# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| **Plaintiff,** | |
| v. | Case No. 3:20-cv-01064 |
| | JUDGES CRENSHAW/FRENSLEY |
| CAPWEALTH ADVISORS, LLC, TIMOTHY J. PAGLIARA, AND TIMOTHY R. MURPHY, | JURY TRIAL DEMANDED |
| **Defendants.** | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

As an investment adviser and representatives of an investment adviser, Defendants CapWealth Advisors, LLC ("CapWealth"), Timothy J. Pagliara ("Pagliara") and Timothy R. Murphy ("Murphy") owe a fiduciary duty to all of their advisory clients. This fiduciary duty requires, among other things, Defendants to either avoid conflicts of interests with their clients or provide "full and frank" disclosures of those conflicts. An adviser's conflict is particularly pronounced, and this fiduciary obligation is of particular relevance, when the

adviser is selecting between options for the exact same investment: one option that pays the firm ongoing compensation that will result in lower performance for the client over time, or one that does not pay the adviser additional compensation and provides higher returns to the client.

In this case, the Commission alleges that Defendants breached their fiduciary duty by failing to disclose adequately that they were placing their own financial interests above those of their advisory clients when recommending that their clients purchase or hold investments in mutual funds. Specifically, the Commission alleges that Defendants recommended to their advisory clients that they purchase or hold shares of mutual funds that charged fees pursuant to Rule 12b-1 under the Investment Company Act of 1940 ("12b-1 fees") even though the client could make the exact same investment by purchasing share classes that did not charge 12b-1 fees. The mutual funds then paid those 12b-1 fees, ultimately, to Pagliara and Murphy through CapWealth's affiliated broker-dealer. By failing to fully inform their advisory clients of the material conflict of interest arising from their receipt of those 12b-1 fees, Defendants violated the securities laws.

## FACTS

The Commission filed its complaint in this matter on December 11, 2020. [Dkt. No. 1.] The complaint alleges that from June 2015 through June 2018, Defendants invested a portion of their clients' money in mutual fund shares that

generated recurring income for Defendants. As a result, those clients earned a lower return on their mutual fund investments than they would have had they purchased or held other identical and available mutual fund investments. [*Id*. ¶¶ 1-4.] The complaint explains that many mutual funds offer multiple share classes that contain the same investments but have differing fees paid by the investors. The higher the fees the less the clients earned on their mutual fund investment. [*Id*. ¶¶ 23-34.] The complaint alleges that Defendants repeatedly invested their clients' money in share classes that charged 12b-1 fees, when otherwise-identical share classes were available that did not charge those fees. [*Id*. ¶¶ 1, 40, 52-53, 61, 88, & 90-93.] As a result of Defendants' share class selection practices, Pagliara's clients paid more than $228,000 in avoidable 12b-1 fees and Murphy's clients paid more than $223,000 in avoidable 12b-1 fees. [*Id*. ¶¶ 42-43.] A portion of those fees were passed on to Pagliara and Murphy as compensation. [*Id*. ¶¶ 21-22 & 31.]

The complaint further alleges that Defendants failed to disclose adequately the material conflict of interest arising from their receipt of 12b-1 fees and that their insufficient disclosures prevented their advisory clients from the opportunity to provide informed consent to these conflicts. [*Id*. ¶¶ 2, 54, & 61.] Specifically, the complaint alleges that Defendants' written disclosures contained either false and misleading statements about the conflict of interest or had no disclosure of the conflict at all. [*Id*. ¶¶ 66-86.] The complaint also alleges that any oral disclosures

made by the individual defendants did not fully and accurately inform the client about the conflict of interest. In fact, the complaint alleges that Defendant Pagliara admitted he did not disclose the conflict of interest because he did not believe there was one and that Defendant Murphy made misleading statements about the availability of lower cost share classes when questioned by advisory clients about his recommendations. [*Id*. ¶¶ 54-60.]

Additionally, the complaint alleges that Defendants told their advisory clients that they would seek best execution by "caus[ing] each customer' [sic] securities transactions to be executed in such a manner that the customer's total cost or proceeds in each transaction is the most favorable under the circumstances." [*Id*. ¶ 87.] Defendants failed to seek best execution by investing their clients in higher cost share classes of mutual funds when lower cost share classes were available. [*Id*. ¶¶ 87-93.] Finally, the complaint alleges that CapWealth violated the securities laws by failing to: 1) implement its conflict of interest disclosure policy in the context of mutual fund share class selection and 12b-1 fees; 2) adopt and implement any policy to ensure that it was regularly evaluating whether its advisory clients had become eligible to convert their mutual fund investments to a lower cost share class; and 3) implement its best execution policy in the context of mutual fund share class selection and 12b-1 fees. [*Id*. ¶¶ 94-99.]

4

As set forth in the complaint, Defendants' share class selection practices violated Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)] and CapWealth violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7] by failing to adopt and implement appropriate policies and procedures to prevent violations of the securities laws. Defendants' arguments to the contrary have no merit. The Court should deny Defendants' motion to dismiss.

## ARGUMENT

## I.  Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the Plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the Plaintiff." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008)). To survive Defendants' motion to dismiss, the Commission need only plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The

5

Commission's complaint satisfies this standard. Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## II. The Commission has alleged a claim against Defendants for violations of Section 206(2) of the Advisers Act

### A. The Commission has alleged sufficient facts to support its claim that Defendants failed to disclose adequately all material information to their clients

In support of their motion to dismiss, Defendants contend that the Commission "must allege that there was a failure to disclose the information *in any manner*." [Dkt. No. 15 at 7 (emphasis in the original).] That is not an accurate statement of the law. Section 206(2) of the Advisers Act prohibits investment advisers from directly or indirectly engaging "in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). Section 206(2) imposes a fiduciary duty on investment advisers to act for their clients' benefit, including an affirmative duty of utmost good faith and full disclosure of all material facts. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963). The Commission claims that Defendants violated Section 206(2) because they failed to provide *full* disclosure of all material facts relating to the conflict of interest arising from their receipt of 12b-1 fees.

6

In arguing that the Commission's claim should be dismissed, Defendants ask the Court to focus only on a limited number of the Commission's allegations. [Dkt. No. 15 at 6-7.] The Court should reject Defendants' argument because the complaint as a whole alleges sufficient facts to show both that Defendants did not provide full disclosure in the written materials provided to their advisory clients and that any oral disclosures made by Defendants were not only insufficient, but in some instances, affirmatively misleading. It is a long-standing principle that an investment adviser must "disclose any potential conflicts of interest accurately and completely." *Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir 2003); *In the Matter of Feeley & Willcox Asset Mgmt. Corp.*, Exchange Act Rel. No. 48162, 2003 WL 22680907, at *11 (July 10, 2003) (Commission Opinion) ("In practical terms, when clients receive a recommendation from their investment adviser, that recommendation must be coupled with disclosure regarding any financial interest the adviser may have in the transaction.").

The Commission's complaint alleges specific facts, which are not addressed in Defendants' motion, showing that Defendants' disclosures of the conflict of interest arising from their receipt of 12b-1 fees were neither accurate nor complete. Specifically, the complaint alleges that Pagliara admitted that he did not believe there was a conflict of interest arising from his share class selection decisions and thus, he would not have disclosed it. [Dkt. No. 1 ¶ 55.] Obviously, a reasonable

inference from this allegation is that Pagliara never disclosed the material conflict of interest arising from his recommendation to purchase or hold higher cost share classes of mutual funds for the client. *See, e.g.*, *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 835 (5th Cir. 1990) ("[A]n investment adviser is a fiduciary and therefore has an affirmative duty of utmost good faith to avoid misleading clients. This duty includes disclosure of all material facts and all possible conflicts of interest."); *Montford & Co., Inc.*, Advisers Act Rel. No. 3829, 2014 WL 1744130, at *13 (May 2, 2014) (Commission Opinion) ("[A]dvisers owe their clients a duty to … disclose information that would expose any conflicts of interest, including even … a potential conflict." (Internal quotation marks omitted)), *petition for review denied*, 793 F.3d 76 (D.C. Cir. 2015).

The complaint also alleges that, on at least two occasions, Murphy provided misleading explanations to advisory clients regarding the conversion of mutual fund investments to lower cost share classes. [Dkt. No. 1 ¶¶ 56-60.] It is reasonable to infer that Murphy would not have misrepresented the availability of lower cost share classes to his clients had he disclosed adequately the material conflict of interest in the first place. *See, e.g., Vernazza*, 327 F.3d at 860 (concluding that to meet its duty of loyalty, an adviser must, among other things, eliminate or at least expose through full and fair disclosure all conflicts of interest which might incline it—consciously or unconsciously—to render advice which

was not disinterested); *Capital Gains*, 375 U.S. at 201 (noting that an investment adviser must "fully and fairly reveal[] his personal interests in [his] recommendations to his clients").

Furthermore, the allegations that Defendants' written disclosures failed to disclose adequately the existence of material conflicts of interest arising from Defendants' mutual fund share class selection decisions are relevant to assessing whether Defendants' disclosures in totality were adequate. As recognized in the Commission Interpretation cited by Defendants, full and fair disclosure could be made "through a combination of Form ADV and other disclosure." [Dkt. No. 15 at 6.] The complaint alleges that Defendants did not disclose adequately the material conflict of interest in their Form ADV or through any other written disclosure, including their Investment Management Agreement.

The complaint alleges that CapWealth disclosed that the firm's principals "may receive" compensation including 12b-1 fees from mutual fund investments of advisory clients in Form ADV materials. [Dkt. No. 1 ¶ 71.] This disclosure was neither accurate nor complete because it did not disclose that Murphy, who was not a firm owner or "principal", regularly received 12b-1 fee compensation, too. [*Id*. ¶ 75.] Further, at the time these brochure disclosures were made, CapWealth did not disclose that its affiliated broker-dealer, directly, and Pagliara, through the owner of CapWealth's affiliated broker-dealer, also were routinely receiving 12b-1 fees

as a result of CapWealth's practice of regularly purchasing, recommending or holding mutual fund shares that paid 12b-1 fees. [*Id*. ¶ 74.]

Moreover, CapWealth's use of the word "may," in the face of an actual conflict of which the firm was aware did not satisfy the investment advisers' fiduciary duty and was false and misleading. *SEC v. Blavin,* 760 F.2d 706, 711 (6th Cir. 1985) (finding that disclosure that investment adviser "may" trade in recommended securities for its own account was false and misleading where the adviser actually invested in 10%-25% of the publicly available stock of the companies it recommended); *see also*, *In the Matter of The Robare Group, Ltd., et al.*, Investment Advisers Act Release No. 4566 (Nov. 7, 2016) (Commission Opinion) (finding, among other things, that adviser's disclosure that it "may" receive a certain type of compensation was inadequate because it did not reveal that the adviser actually had an arrangement pursuant to which it received fees that presented a potential conflict of interest); *aff'd in part and rev'd in part on other grounds, Robare Group, Ltd., et al. v. SEC*, 922 F.3d 468, 472 (D.C. Cir. 2019); *In the Matter of Thoroughbred Financial Services, LLC, et al.*, Advisers Act Rel. No. 5090 (Dec. 21, 2018) (settled order) (finding that an investment adviser based in Brentwood, Tennessee, which disclosed that it "may" receive 12b-1 fees from the sale of mutual funds, violated Section 206(2) of the Advisers Act by failing to disclose the actual conflict of interest presented by its purchase of mutual fund

share classes that charged 12b-1 fees when its clients were eligible to purchase share classes of the same funds that did not charge 12b-1 fees).

The complaint further alleges that both individual defendants approved and provided to their clients an individualized Form ADV Part 2B Brochure Supplement ("Supplement") that made no mention of their receiving 12b-1 fees. [Dkt. No. 1 ¶¶ 79-82.] The individual defendants' failure to disclose their receipt of 12b-1 fees in their individual Supplements provides a reasonable basis to infer that any oral disclosures they may have made regarding 12b-1 fees were inadequate. As alleged in the complaint, the instructions for the Supplement state in pertinent part: "If the supervised person receives commissions, bonuses or other compensation based on the sale of securities or other investment products, including as a broker-dealer or registered representative, and including distribution or service ("trail") fees from the sale of mutual funds, disclose this fact." [*Id*. ¶ 80.] The absence of any disclosure at all about the 12b-1 fees, commonly known in the securities industry as "trails," in either Pagliara's or Murphy's Supplement could lead a reasonable person to conclude that the individual defendants violated their duty to provide fair and full disclosure about their receipt of 12b-1 fees.

In this case, Defendants violated Section 206(2) by failing to disclose the financial conflict of interest created by their purchase, recommendation, or continued holding of higher-cost mutual fund share classes on behalf of their

advisory clients. Moreover, by failing to disclose their practice of selecting mutual fund share classes with 12b-1 fees, even when lower-cost share classes of the same funds were available, and the additional compensation received as a result, Defendants' disclosures failed to provide full and fair disclosure so that clients could understand Defendants' actual financial conflicts of interest and make informed investment decisions. *See, e.g.*, *In the Matter of PNC Investments LLC*, Advisers Act Rel. No. 4878 (Apr. 6, 2018) (settled proceeding finding that an investment adviser violated Section 206(2) of the Advisers Act by failing to disclose share class distinctions and the conflict of interest with respect to placing advisory clients in higher-cost share classes); *In the Matter of Cadaret, Grant & Co., Inc.*, Advisers Act Rel. No. 4736 (Aug. 1, 2017) (same); *see also SEC v. Westport Capital Markets, LLC*, 408 F. Supp. 3d 93 (D. Conn. 2019) (granting SEC's motion for summary judgment against registered investment adviser and principal, and finding both liable under Section 206(2) for disclosure failure regarding receipt of 12b-1 fees).

B.  <u>The Commission has alleged sufficient facts to support its claim that Defendants breached its duty to seek best execution</u>

In their motion to dismiss, Defendants argue that an adviser's only duty as it relates to best execution is to evaluate the quality of the broker-dealer executing their clients' transactions. [Dkt. No. 15 at 8-9.] That argument has no merit. An adviser's best execution duty is part of the adviser's general duty of care where the

12

adviser has the responsibility to decide how client trades are executed. An adviser fulfills this duty by seeking to obtain the execution of securities transactions on behalf of a client with the goal of maximizing value for the client under the particular circumstances occurring at the time of the transaction. *See*, e.g., *In the Matter of Kidder Peabody & Co.*, 43 SEC 911, 1968 WL 87653 (1968) ("One of the basic duties of a fiduciary is the duty to execute securities transactions for clients in such a manner that the client's total cost or proceeds in each transaction is the most favorable under the circumstances."). The Commission has alleged that Defendants breached their duty to seek best execution because they failed to adequately evaluate the costs associated with the more expensive share classes of mutual funds when making investment decisions for their clients.

An adviser's best execution responsibilities arise in connection with decisions in a transaction that the adviser controls and that may affect the value of a trade. While the choice of broker-dealers is one of the decisions an adviser may make concerning the costs paid by the client, it is not the only one. And Defendants were well aware of this duty. In fact, CapWealth's Form ADV Part 2A brochure specifically stated:

> It is CapWealth's policy to obtain the "best execution" of its customers' securities transactions on a best efforts basis since the firm does not control trade execution. CapWealth, through the trading department at [CapWealth's clearing broker-dealer] or any other custodian will cause each customer' [sic] securities transactions to be executed in such a manner that the customer's

> total cost or proceeds in each transaction is the most favorable under the circumstances.

[Dkt. No. 1 ¶ 87.]  The adviser's best execution duty is to seek the most favorable conditions for the client or customer in the transaction.  In the context of selecting among share classes of the same mutual fund, maximizing value would include weighing the relative costs of the share classes over the period that the adviser, at the time of the transaction, expects the client to hold the shares.

The complaint alleges that Defendants violated Section 206(2) of the Advisers Act by purchasing mutual fund share classes that charged 12b-1 fees when other share classes in the same funds were available that presented a more favorable value under the particular circumstances in place at the time of the transactions. *See Malouf v. SEC*, 933 F.3d 1248, 1264 (10th Cir. 2019) ("This obligation [to seek the most favorable terms reasonably available under the circumstances] requires investment advisers to seek the lowest price reasonably available for a client unless the more expensive option results in better service."). The complaint also alleges that CapWealth did not adopt and implement any procedures designed so that the costs associated with different share classes of a fund would be evaluated when it made purchases for clients, or otherwise seek the share class that offered the most favorable value for the clients.  [Dkt No. 1 ¶ 89.] Instead, the complaint alleges that Defendants routinely selected the higher-cost share classes of various fund families, even where the same funds offered advisory

clients lower-cost share classes without 12b-1 fees and with the same associated transaction charges as the funds' higher-cost share classes. [*Id.* ¶¶ 90-93.] These allegations are sufficient to support the Commission's claim that Defendants failed to seek the best execution in violation of Section 206(2) of the Advisers Act.

Defendants also argue that the Commission's best execution claim must fail because the amounts alleged in the complaint are not material. As an initial matter, the allegations in the complaint are merely examples of Defendants' conduct. The Commission is not required to allege every fact in support of its claims; it is only required to allege sufficient facts to place Defendants on notice of the basis of its claims. *See, e.g.*, *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (stating that a complaint not need provide detailed factual allegations in order to survive dismissal); *see also, U.S. v. St Luke's Hospital*, 441 F.3d 552, 558 (8th Cir. 2006) (noting that plaintiff need not plead "specific detail of every fraudulent" practice, but rather provide some representative examples of the fraudulent conduct).

Defendants also turn the materiality inquiry on its head by arguing that the amounts alleged are not material to Defendants; the materiality inquiry actual focuses on the investor. A fact is considered material if there is a substantial likelihood that the fact would be viewed by a reasonable investor as having significantly altered the total mix of information made available. *Basic, Inc. v.*

*Levinson*, 485 U.S. 224, 231-32 (1988); *Capital Gains*, 375 U.S. at 191-92

(holding that a conflict of interest is a material fact which an investment adviser

must disclose to its clients). The complaint alleges that Defendants breached their

duty to seek best execution by purchasing higher cost share classes of mutual funds

when there were lower cost shares classes of the same fund available. The fact that

Defendants failed to seek best execution is itself material to every transaction. *See,*

*e.g., Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 926 (8th Cir. 2018) ("[T]he

broker's 'failure to provide best execution was material to every trade in covered

securities that [the] customer [ ] chose to have [the broker] execute.'" (quoting

*Lewis v. Scottrade, Inc.*, 879 F.3d 850, 853 (8th Cir. 2018))); *Fleming v. Charles*

*Schwab Corp.*, 878 F.3d 1146, 1155 (9th Cir. 2017) ("[T]he false promise of best

execution ... caused losses directly resulting from what clients believed to be

legitimate securities transactions. The net price obtained when purchasing or

selling a security is plainly material to a buyer or seller, and the alleged breach

here coincided with securities transactions." (internal quotation marks and

alterations omitted); *In the Matter of IFG Network Securities*, Exchange Act

Release No. 54127 (July 11, 2006) (Commission Opinion) ("The rate of return of

an investment is important to a reasonable investor. In the context of multiple-

share-class mutual funds, in which the only bases for the differences in rate of

return between classes are the cost structures of investments in the two classes,

16

information about this cost structure would accordingly be important to a reasonable investor.").

### III. The Commission has alleged a claim against CapWealth for violations of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder.

A. <u>The Commission's claim is supported in both law and fact</u>

Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder require registered investment advisers to adopt and implement written compliance policies and procedures reasonably designed to prevent violations of the Advisers Act and the rules thereunder by the investment adviser and its supervised persons. *Compliance Programs of Investment Companies and Investment Advisers*, Advisers Act Rel. No. 2204, 68 F.R. 74714 (Dec. 24, 2003) (Rule 206(4)-7 adopting release). The Commission also recommended in its release that advisers "should first identify conflicts and other compliance factors creating risk exposure for the firm and its clients in light of the firm's particular operations, and then design policies and procedures that address those risks." *Id*. at 74716.

Defendants argue that the Commission has failed to state a claim for a violation of Section 206(4) and Rule 206(4)-7 thereunder for three reasons. First, Defendants reincorporate their argument that the Commission's claims regarding best execution fail as a matter of law. As discussed in Section II.B *supra*, Defendants' argument cannot be sustained.

Second, Defendants argue that they had no duty to review prospectus

materials and determine whether to convert clients to a different fund and that the Commission is retroactively attempting to impose such a duty on CapWealth. [Dkt. No. 15 at 14.] Yet, it well settled law that a basic function of an investment adviser is to furnish "to clients on a personal basis competent, unbiased and continuous advice regarding the sound management of their investments." *See Capital Gains*, 375 U.S. at 187. Under the facts of this case, assessing whether a lower cost share class of the same mutual fund is available to a client is inherent to the sound management of a client's investment.

Moreover, the complaint alleges that the Defendants were actually aware of the availability of lower cost share classes and converted some, but not all, of their clients to those lower cost share classes, while leaving other clients in the costlier share classes, thereby generating additional compensation for Pagliara and Murphy, for years. [Dkt. No. 1 ¶¶ 44-53.] The complaint also alleges that CapWealth told all clients that it would perform "periodic account reviews to determine if the investments in client accounts remained consistent with the client's specified investment criteria and the client's financial goals and objectives." [*Id*. ¶ 36.] These allegations support the Commission's claim that CapWealth failed: 1) to adopt and implement written policies or procedures reasonably designed to prevent violations of the Advisers Act in connection with CapWealth's and its investment adviser representatives' share class selection

practices for clients; 2) to implement its policy requiring the disclosure of conflicts of interest; and 3) to adopt and implement reasonably designed policies and procedures for regularly reviewing fund prospectus materials to assess whether a client had become eligible for conversion to a lower-cost share class without 12b-1 fees.

Finally, Defendants argue that there was no need for CapWealth's policies and procedures to address mutual fund share class selection because no such conflict exists. In support of this argument, CapWealth directs the Court to an expert report prepared on its behalf. There is no legitimate basis for considering such materials in the context of a motion to dismiss, and the Court should reject Defendants' attempt to argue the merits of their defense at this stage in the proceeding. Furthermore, the Commission has alleged that each individual defendant caused his clients to incur more than $200,000 in avoidable 12b-1 fees during the relevant time period. [*Id*. ¶¶ 42 & 43.] The complaint alleges that those fees could have been avoided if Defendants had initially invested or converted their clients to lower cost share classes of the same mutual funds. The Commission has alleged sufficient facts to show both the existence of a potential conflict of interest arising from CapWealth's share class selection process and the absence of any policies or procedures to ensure that the conflict of interest was disclosed adequately to CapWealth's advisory clients. The Commission's

complaint states a claim against CapWealth for a violation of Section 206(4) and 206(4)-7 of the Advisers Act.

B. <u>The type of remedy sought is not a valid ground for dismissal</u>

CapWealth erroneously argues that the only remedy sought by the Commission against CapWealth for its violation of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder is an injunction. The complaint clearly seeks civil penalties against CapWealth for the violations set forth in both Count I and Count II of the complaint. Regardless, even if the Commission were seeking only an injunction as a remedy for its claims in Count II of the complaint, it would not be proper for the Court to dismiss the claim at this stage of the proceedings. A motion to dismiss is not the appropriate vehicle for the argument that an injunction is legally inappropriate, which requires factual development. *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011) (reversing dismissal of SEC request for injunction under Rule 12(b)(6)) *rev'd on other grounds*, 568 U.S. 442 (2013).) A finding of liability is a prerequisite to injunctive relief, and the factual basis for liability informs the Court's analysis of whether an injunction should issue. *SEC v. Treadway*, 430 F. Supp. 2d 293, 346 (S.D.N.Y. 2006) (declining to rule on whether remedies were warranted because of the existence of genuine issues of material fact).

Moreover, CapWealth's argument that any injunction issued by the Court would be an improper "obey the law injunction" is not valid. The Court can avoid

this issue by adding language in the injunction specifying the proscribed conduct. *See, e.g.*, *SEC v. Skwara*, Case No. 12-61078-CIV, 2012 WL 12929738 at n.2 (S.D. Fla. Dec. 31, 2012) (an injunction that "makes reference to statutory and regulatory language and citations, [but] also includes specific language detailing the conduct that [Defendant] is prohibited from undertaking" complies with F.R.C.P. 65); *see also*, *SEC v. BIH Corp.*, 2014 WL 3416854, * 4 (S.D.Fla. Jul 14, 2014) (same).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.


Dated this 25th day of February, 2021.

Respectfully submitted,

*/s/ Kristin W. Murnahan*
M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

Kristin W. Murnahan
Senior Trial Counsel
Georgia Bar No. 759054
Tel: (404) 842-7655
Email: murnahank@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA  30326-1382
Tel (main): (404) 842-7600
Fax: (703) 813-9364

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification to all counsel of record in this case.

This 25th day of February, 2021.

*/s/ Kristin W. Murnahan*
Counsel for Plaintiff