# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br><br><br>CAPWEALTH ADVISORS, LLC, TIMOTHY J. PAGLIARA, AND TIMOTHY R. MURPHY,<br><br>    Defendants. | Case No. 3:20-cv-01064<br><br>JUDGES CRENSHAW/FRENSLEY<br><br><br>JURY TRIAL DEMANDED |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Defendants admit the vast majority of the material facts in this case. (*See generally* ECF No. 79.) They acknowledge that (i) as investment advisers, they had a fiduciary duty to make full and fair disclosures to their clients about 12b-1 fees (*id.* ¶ 3); (ii) they received ongoing compensation—in addition to their advisory fees—from the receipt of 12b-1 fees (*id.* ¶¶ 5, 10, 12-17); and (iii) they did not inform clients in their required disclosures that they were receiving 12b-1 fees, that the receipt of 12b-1 fees created a conflict of interest for them, or that clients could avoid 12b-1 fees altogether by investing in or converting to share classes that did not incur such fees (*id.* ¶¶ 37-42, 53). As the SEC explains below, Defendants' contention that the SEC's motion is procedurally barred and that a jury must resolve certain factual disputes lacks merit.

I. **DEFENDANTS' PROCEDURAL ARGUMENT IS UNFOUNDED**

Defendants' contention (at 5-6) that the "Court should summarily deny the SEC's motion as an unauthorized motion for partial summary judgment" has no merit. The SEC moved for summary judgment on all of its claims. (ECF Nos. 63-65.) If granted, the SEC's motion would obviate the need for a jury trial. (*Id.*) The fact that the Court would still need to determine remedies does not run afoul of the requirement that leave be granted before partial summary judgment motions are filed. *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (noting that the court determines the remedies in an SEC enforcement action and not a jury); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (same).

II. **DEFENDANTS VIOLATED SECTION 206(2) OF THE ADVISERS ACT**

A. <u>Defendants Did Not Eliminate Their Conflict of Interest From Receiving 12b-1 Fees</u>

Defendants' own evidence rebuts their central argument (at 8-10) that they "discounted [their] advisory fees to offset the 12b-1 fees [they] received." (Pagliara Dep. Ex. 6 at 9 n.4 &

App. 1 ("CapWealth received 12b-1 fees in 2016, 2017, and 2018 totaling, respectively, $56,749, $54,527, and $13,533, from clients who did not receive a discount to the 1% advisory fee.") (typo corrected); Second Rapkin Decl. ¶¶ 3-5 (noting that CapWealth also had clients in 2015 who paid avoidable 12b-1 fees but did not receive any advisory fee discount).) Contrary to Defendants' assertion, the undisputed evidence shows that certain clients did not receive *any* advisory fee discount. *Pierce v. Ocwen Loan Serv.*, 2021 WL 4129526, at *2 (6th Cir. Sept. 10, 2021); *Spectrum Cubic, Inc. v. Grant Prod. de Mexico*, 552 Fed. Appx. 452, 457 (6th Cir. 2014).

Defendants' reliance on discounts given to their remaining clients is also misplaced. Defendants acknowledge that it is "common" for advisory fees to be negotiated, and CapWealth's Form ADV stated for years that Defendants' advisory fees may be discounted based on seven factors, but the receipt of 12b-1 fees was not one of those factors. (Pagliara Dep. 32:11-13; Murphy Dep. 35:9-11; Pagliara Dep. Ex. 1 at 8.) Indeed, there is nothing in Defendants' Form ADV or management agreements with its clients connecting any advisory fee discount to 12b-1 fees. (Pagliara Dep. Ex. 1 at 8; Murphy Test Ex. 5 at 5; Roback Decl. Ex. 1.)

Defendants further admit that clients who did not pay any 12b-1 fees also received discounts, the discounts given to clients who did not pay 12b-1 fees were not any less than the discounts given to clients who did pay 12b-1 fees, and any discount given was not a dollar-for-dollar offset of the 12b-1 fees incurred by those clients. (ECF No. 79 ¶ 28; Venable Dep. 45-48, 56-60; Pagliara Dep. 32-34; Murphy Dep. 54.) Even assuming that Defendants did tell clients that advisory fees would be discounted to offset 12b-1 fees, such a representation would be false or, at the very least, misleading. *SEC v. Capital Gains Res. Bureau*, 375 U.S. 180, 196 (1963).

B. <u>Defendants Negligently Made Material Misstatements to Their Clients</u>

Defendants' mandatory written disclosures to their advisory clients were misleading

because they failed to disclose that Defendants were receiving 12b-1 fees. *Robare Group, Ltd. v. SEC*, 922 F.3d 468, 475-77 (D.C. Cir. 2019); *SEC v. Westport Capital*, 408 F. Supp. 3d 93, 106-07 (D. Conn. 2010). Defendants' failure to make such disclosures and follow the Form ADV instructions was at least negligent. *Id.* The Commission interpretation cited by Defendants (at 11) merely recognizes that disclosures may be made "through a combination of Form ADV and other disclosure;" it does not mean that investment advisers may disregard the Form ADV's clear and explicit instructions and fail to disclose the required information. *See* 84 FR 33669 at *33677-78 (noting that the Form ADV "sets out minimum disclosure requirements, including disclosure of certain conflicts."). Defendants' own proffered expert agreed that the standard of care is for investment advisers to follow the instructions and disclose in their Form ADV that they are receiving 12b-1 fees. (Macey Dep. 80:6-83:8.) Defendants failed to do so.

      Defendants' oral disclosures—even if made—were also misleading. Pagliara and Murphy admit that they failed to inform their advisory clients that they could purchase or convert to share classes of the exact same mutual funds that did not charge 12b-1 fees. (Pagliara Dep. 40:21-24; Murphy Dep. 42:24-43:20.) Pagliara and Murphy also acknowledge that they did not inform clients that they had a conflict of interest in selecting mutual fund share classes that charged 12b-1 fees. (Pagliara Dep. 58:25-59:2; Murphy Dep. 58:6-14.) Defendants' failure to inform clients—to whom they owed a fiduciary duty—of their conflict of interest and that clients could acquire or convert to share classes that did not charge 12b-1 fees was at the very least misleading.[1] *Robare Group*, 922 F.3d at 476; *Westport Capital*, 408 F. Supp. 3d. at 104.

---

[1] Mutual fund prospectuses only describe possible investment options and did not inform clients of Defendants' specific conflicts of interest or actual receipt of 12b-1 fees. Additionally, over 90% of the impacted accounts were discretionary accounts, meaning Defendants could make investment decisions without preclearing them with clients. (Pagliara Dep. 102-03; Murphy Dep. 15.)

C. Defendants' Reliance on a Consultant is Misplaced

Defendants' contention (at 13-16) that they reasonably relied on a consultant for their disclosures has no merit. The consultant did not even recall providing services to Defendants during the relevant period, *see* Landers Dep. 14-15; Landers Dep. Ex. 17, and their contract did not involve the consultant providing legal advice regarding the firm's disclosures. *Westport Capital*, 408 F. Supp. 3d at 108 (granting SEC summary judgment on Section 206(2) claims and rejecting reliance on consultant defense because consultant was not retained to provide legal advice). Likewise, CapWealth's Chief Compliance Officer—who was responsible for preparing CapWealth's Forms ADV before and during nearly all of the relevant period—does not recall discussing the disclosure of 12b-1 fees with the consultant. (Roland Dep. 60, 65-66.)

Moreover, Defendants were aware of their disclosure obligations but repeatedly failed to inform their advisory clients of the conflict of interest presented by 12b-1 fees and the availability of lower cost share classes. Defendants may not shift blame to a consultant for their own disclosure failures. *Robare Group*, 922 F.3d at 478 (noting that "any reliance on such advice [would be] objectively unreasonable"); *Westport Capital*, 408 F. Supp. 3d at 107-08 (same); Landers Dep. 17:1-10 (noting Defendants were responsible for their own disclosures).

In addition, Defendants falsely told their consultant that they were discounting their advisory fees to offset any 12b-1 fees incurred by their clients. (Landers Dep. 14-17, 76-77; Pagliara Dep. 34.) Defendants admit as much in their brief. (ECF No. 78 at 13.) Defendants may not present their consultant with erroneous information and then claim that he approved of their disclosures.[2] *United States v. Scully*, 877 F.3d 464, 476-78 (2d Cir. 2017); Landers Dep. Ex. 17 at 2 (noting that the consultant's work depended on information provided by Defendants).

---

[2] Defendants provided the same false information to their expert. (Macey Dep. 55:23-56:9.)

4

D. <u>Defendants' Advisory Clients Did Not Consent to Paying Avoidable 12b-1 Fees</u>

Defendants' contention (at 21-22) that their clients consented to paying 12b-1 fees after the relevant period is unfounded. Defendants raised their "standard advisory fee" on *all* of their clients in 2018, not just the ones who had been paying 12b-1 fees. (ECF No. 78 at 21-22.) In doing so, Defendants did not even mention 12b-1 fees, much less obtain their clients' informed consent to paying 12b-1 fees when alternative share classes were available without such fees. (Roback Decl. Ex. 2.) The fact that Defendants raised their *advisory fees* on all of their clients after the relevant period does not mean that the clients who had been paying avoidable *12b-1 fees* retroactively consented to paying such fees on top of the advisory fees they were paying.[3] *First Dakota Nat. Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 809-10 (8th Cir. 1993).

**III. CAPWEALTH VIOLATED SECTION 206(4)-7 OF THE ADVISERS ACT**

CapWealth violated Section 206(4) by failing to adopt and implement written policies reasonably designed to prevent violations of the Advisers Act arising from the firm's mutual fund share class selection practices. *SEC v. Ambassador Advisors, LLC*, 2021 WL 5998456, at *12-13 (E.D. Pa. Dec. 20, 2021). Indeed, the firm had no written policies or procedures that addressed its share class selection practices or receipt of 12b-1 fees. (Venable Dep. Ex. 41 at 13, 83-100; Venable Dep. 107-110.) "Defendants' complete failure to adopt any written policy addressing its duties of conflict disclosure, best interest and best execution in the context of mutual fund transactions was at least negligent." *Ambassador Advisors*, 2021 WL 5998456, at *12-14. Defendants' citation (at 24-25) to their consultant and litigation expert fail for the same reasons discussed above. (*See* Section II.C.)

---

[3] Contrary to Defendants' assertion, they could have obtained share classes that did not incur 12b-1 fees during the relevant period. (First Rapkin Decl. ¶¶ 5-8.) Indeed, Defendants obtained the lower cost share classes for certain clients, but failed to do so for others. (ECF No. 79 ¶ 67.)

5

# **CONCLUSION**

For the foregoing reasons, the Court should grant the SEC's summary judgment motion.

Dated: March 14, 2022                    Respectfully submitted,

/s/ *Harry B. Roback*
M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

Kristin W. Murnahan
Senior Trial Counsel
Georgia Bar No. 759054
Tel: (404) 842-7655
Email: murnahank@sec.gov

Harry B. Roback
Senior Trial Counsel
Tennessee Bar No. 021665
Tel: (404) 942-0690
Email: robackh@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA  30326-1382
Tel (main): (404) 842-7600
Fax: (703) 813-9364

## **CERTIFICATE OF SERVICE**

      This is to certify that on March 14, 2022, I caused the following Reply in Support of the SEC's Motion for Summary Judgment to be served on the following counsel for defendants through the Court's ECF system:

Bradley J. Bondi
Cahill Gordon & Reindel LLP
1990 K Street, N.W.
Suite 950
Washington, DC 20006


Eugene N. Bulso, Jr.
Eric W. Smith
Bulso PLC
155 Franklin Road
Suite 400
Brentwood, TN 37027


Sara E. Ortiz
Cahill Gordon & Reindel LLP
32 Old Slip
New York, NY 10005

                                                  */s/ Harry B. Roback*
                                                  Counsel for Plaintiff

7
Case 3:20-cv-01064   Document 82   Filed 03/14/22   Page 8 of 8 PageID #: 4022