# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CAPWEALTH ADVISORS, LLC *et al.*<br><br>Defendants. | Case No. 3:20-cv-01064<br><br>Judge Waverly D. Crenshaw Jr./<br>Magistrate Judge Jeffrey S. Frensley<br><br>JURY DEMAND |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Eugene N. Bulso Jr. (BPR No 12005)
**BULSO PLC**
155 Franklin Rd., Suite 400
Brentwood, TN 370267
Tel: (615) 913-5135
gbulso@bulso.com
*Attorney for the Defendants*

Bradley J. Bondi
**CAHILL GORDON & REINDEL LLP**
New York Bar No. 4432738
1990 K Street, N.W. Suite 950
Washington D.C. 20006
Tel: (202) 862-8910
bbondi@cahill.com

Susan E. Ortiz
**CAHILL GORDON & REINDEL LLP**
New York Bar No. 5302070
32 Old Slip
New York, NY 10005
Tel: (212) 701-3368
sortiz@cahill.com

*Attorneys for CapWealth Advisors, LLC*

# INTRODUCTION

The SEC claims that defendants' selection of mutual funds that paid $45,365 in 12b-1 fees violated Section 206(2). (Dkt. 76 at 18) The SEC further claims that defendants' failure to convert mutual fund investments to lower-cost share classes when they became available generated an additional $406,145 in "avoidable 12b-1 fees" and thereby violated Section 206(2). (*Id*. at 15) Finally, the SEC claims that defendants' failure to disclose to clients of CapWealth facts material to their receipt of 12b-1 fees violated Section 206(2). (*Id*. at 18) The SEC has failed to support any of these claims.

The SEC's claim regarding the $45,365 fails because (a) the SEC has agreed that no "best execution" failure occurred (and therefore no violation of Section 206(2) occurred) if a client paying the 12b-1 fees received an offset of the client's advisory fee (Donahue dep. 65-66), (b) defendants have provided unrefuted evidence that CapWealth discounted the advisory fees clients paid to offset its receipt of 12b-1 fees (Dkt. 60, ¶ 7), and (c) the SEC has failed to identify a single client who paid any part of the $45,365 in "avoidable 12b-1 fees" who did not also receive a discount.

The SEC's claim regarding the $406,145 fails because (a)—contrary to the SEC's claims—the class-conversion costs actually exceeded the amount of the 12b-1 fees the SEC claims were "avoidable;" (b) defendants have provided evidence that CapWealth discounted the advisory fees clients paid to offset its receipt of the $406,145 in 12b-1 fees; and (c) the SEC has failed to identify a single client in this "failure to convert" group who paid any part of the $406,145 in "avoidable 12b-1 fees" who did not also receive a discount.

The SEC's claims regarding the alleged disclosure failures should be dismissed on summary judgment because (a) a court must consider both written and oral disclosures in determining whether disclosure was adequate, and (b) defendants have put forth *unrefuted* evidence that defendants Pagliara and Murphy disclosed *in person* to each and every client that CapWealth used 12b-1 fees in its advisory fee structure. (*See, e.g.*, Dkt. 52 at 16, 17.) The SEC's only response to

this conundrum is to argue, albeit inconsistently, (a) that defendants' testimony regarding such disclosure is "conclusory" (Dkt. 76 at 8) and (b) that defendants did not use the nomenclature "conflict of interest" in making the disclosure (*Id*. at 9) But the testimony of Messrs. Pagliara and Murphy regarding the in-person disclosures made to clients is anything but conclusory. That testimony is specific and detailed. (*See*, *e.g.*, Dkt. 52 at 16, 17.) Further, that the defendants did not use the conclusory phase "conflict of interest" is inconsequential. They disclosed the relevant, material facts regarding the receipt of the 12b-1 fees, which is all that the regulations require. (*See* Dkt. 63 at 10.)

## ARGUMENT

### I. THE CLAIMS FOR DISGORGEMENT FAIL FOR LACK OF EVIDENCE.

*Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936, 1940 (2020) established that only "a disgorgement award that does not exceed a wrongdoer's net profits" is permissible. Applying *Liu*, the court in *Securities and Exchange Commission v. Navellier & Associates, Inc*., No. 17-cv-11633, 2021 WL 5072975, * 4 (D. Mass. Sept. 21, 2021), correctly held:

> To determine the net profits, it is necessary first to determine the amount of revenues from the wrongdoing. Then it is necessary to deduct those expense that are legitimate, that is, that are unrelated to the wrongdoing, here the expenses associated with providing advisory services. *See id.* at 1950 ("courts must deduct legitimate expenses before ordering disgorgement"). *Net profits are the "gains 'made upon any business or-investment, when both the receipts and payments are taken into the account.*

(emphasis added)(quoting *Liu*). When it seeks disgorgement, the SEC carries the initial burden of proving the reasonable approximation of a defendant's net profits:

> Before disgorgement may be imposed, the SEC must first "establish[ ] a reasonable approximation of the profits causally related to the fraud." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013). After the SEC has established such a "reasonable approximation," then "the burden shifts to the defendant to show that his gains were unaffected by his offenses," and a defendant must "clearly ... demonstrate" that the "disgorgement figure was not a reasonable approximation."

*SEC v. Genovese*, No. 18-cv-942, 2021 WL 3501421, * 14 (S. D. N. Y. Aug. 6, 2021); *see also SEC v. Mizrahi*, No. CV 19-2284 PA, 2020 WL 6114913, * 2 (C. D. Cal. Oct. 5, 2020). The SEC

has failed to meet its burden as to either individual defendant.

Indeed, the SEC has not even attempted to prove what revenues Mr. Pagliara or Mr. Murphy received from the alleged wrongdoing. The revenues ($223,447 and $228,063) to which the SEC refers on page 23 of its Response (Dkt. 76) are revenues of a non-party, CapWealth Investment Services, Inc., not revenues Mr. Pagliara and Mr. Murphy actually received. It is undisputed that only "[a] portion of the 12b-1 fees were paid to Murphy as compensation, while Pagliara received certain 12b-1 fees as net profits after expenses were paid through his ownership stake in CapWealth's holding company." (Dkt. 79, ¶ 17.) The Supreme Court has stated unequivocally that only "a disgorgement award that does not exceed a wrongdoer's net profits" is permissible. *Liu*, 140 S. Ct. at 1940. Because the disgorgement award the SEC seeks violates *Liu*, and because the SEC has failed to present evidence to support an award that Liu would permit, its claim for disgorgement should be dismissed.[1] claim that this issue is reserved to the "remedies phase" of the case (Dkt. 76 at 23) But there is no "remedies phase" to this case. The Case Management Order (Dkt. 24) contemplates no such phase. Federal summary judgment jurisprudence required the SEC to come forward now—in response to a properly supported motion for summary judgment—with evidence of the 12b-1 fees it claims Mr. Pagliara received. *Celotex,* 477 U.S. at 324. It has undeniably failed to do so. The claim should now be dismissed.

## II. THE SEC FAILED TO PROVE A VIOLATION OF SECTION 206(2).

### A. The SEC Failed to Prove Failure a Failure to Disclose.

In order to prove a violation of Section 206(2), the SEC must necessarily prove that a defendant engaged in an act or practice that operated as a fraud on an investor. Here, the SEC claims that Messrs. Pagliara and Murphy each violated Section 206(2) because each, allegedly, failed to

---

[1] The SEC attempts to salvage its disgorgement claim by suggesting that there is something called a "remedies phase" (Dkt. 76 at 23) at which the Court will address the issue of disgorgement. The Case Management Order (Dkt. 24) contemplates no such phase. The SEC was obligated to come forward with evidence to support its claim on summary judgment. Its failure to do so is fatal to its claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

disclose material facts to as to CapWealth's clients concerning 12b-1 fees. Defendants' initial Memorandum established (a) any required disclosure may be written or oral and (b) Mr. Pagliara and Mr. Murphy each disclosed their receipt of 12b-1 fees to each and every one of their clients. In order to survive summary judgment, the SEC necessarily had to come forward with evidence to refute the testimony of Mr. Pagliara and Mr. Murphy. The SEC wholly failed to do so.

In its opposition papers, the SEC filed a declaration (Dkt. 76-3) from just *one* of CapWealth's clients, Lawrence Langteau. And that declaration states only that he does not recall the 12b-1 fees discussion. (*Id*. ¶¶ 6, 7.) It does not refute Mr. Murphy's testimony that the discussion occurred. The Langteau Declaration is insufficient to defeat summary judgment as to Mr. Langteau, much less any other CapWealth client.

To avoid entry of summary judgment against it, the SEC argues that the testimony of Messrs. Pagliara and Murphy is "conclusory" and, therefore, provides an insufficient factual basis for summary judgment. (Dkt. 76 at 8) But there is nothing "conclusory" about the testimony of either Mr. Pagliara or Mr. Murphy. Each testified in detail as to facts, not conclusions. *See* Dkt. 52, pp. 16-18. Each testified that they disclosed their receipt of 12b-1 fees to each and every CapWealth client. Such testimony is competent to prove that disclosure occurred, and such testimony is unrebutted in the record.

The SEC's failure to prove a failure to disclose as to any specific investor is fatal to its claim. The SEC has agreed that "to determine whether an investment advisor has met his fiduciary duty of disclosure to an investor, one must consider…any oral disclosure made to the investor." (*Id*. at 50.) When this Court considers the oral disclosures that the unrebutted testimony of Messrs. Pagliara and Murphy prove occurred, it is clear that the SEC has failed to prove its case. The SEC has failed to identify a single investor to whom defendants allegedly made an inadequate oral disclosure. The SEC's claim under Section 206(2) should thus be dismissed.

B. **The SEC Cannot Prove Any "Best Execution" Failure.**

The SEC defends its "best execution" claim based upon its assertion that—despite the testimony of every percipient witness to speak on the matter--CapWealth did not actually discount its standard advisory fee to offset its receipt of 12b-1 fees. (Dkt. 76 at 7) According to the SEC, the written record contradicts the testimony of no fewer than four (4) witnesses who have testified in detail regarding CapWealth's practice of discounting its advisory fees to offset its receipt of 12b-1 fees. (*Id.*) The written record does no such thing. To the contrary, the record fully corroborates the testimony of the percipient witnesses that CapWealth provided discounts to offset 12b-1 fees. See Dkt. 60, ¶ 7. The record shows that CapWealth provided discounts to 463 clients to offset receipt of 12b-1 fees. (Pagliara Dep. Ex. 6 at App. 1)

The fact that certain accounts that paid 12b-1 fees did not pay an advisory fee (and therefore received no discount) does not "contradict" the evidence that CapWealth provided a discount to most of its clients. Even as to these accounts, CapWealth provided other consideration to account for its receipt of 12b-1 fees, as CapWealth's chief executive officer, Phoebe Venable, has testified. (Dkt. 80 at 96)("we…said, We're going to receive these 12b-1 fees, we're going to manage your mutual -- you know, a mutual fund portfolio for you, so that -- they would not have received an advisory fee.")

C. **The SEC Cannot Prove Any Failure to Convert.**

The SEC claims that there is no charge to convert a client's investment from one share class to another. But this is simply false. Sterne Agee's Clearing Agreement with CapWealth specifies that each mutual fund transaction carries with it a charge of $13. (Second Venable Decl. Ex. 1 at 42) The fact that the SEC is able to produce four transactions where the charge was not imposed proves nothing. CapWealth requested waiver of the charges from time to time and did apparently did so in the isolated transactions that are mentioned in the Anthony Declaration. (*Id.* ¶ 4.) These transactions do not nullify the terms of the Clearing Agreement.

4863-7305-2332.3
Case 3:20-cv-01064   Document 83   Filed 03/14/22   Page 6 of 8 PageID #: 4052

## CONCLUSION

For the foregoing reasons, this Court should grant defendants' Motion for Summary Judgment in all respects.

Respectfully submitted,

s/ Eugene N. Bulso Jr.
Eugene N. Bulso, Jr. (BPR No. 12005)
BULSO PLC
155 Franklin Rd., Suite 400
Brentwood, TN 37027
Tel: (615) 913-5135
gbulso@bulso.com
*Attorneys for Defendants*

s/ Bradley J. Bondi
Bradley J. Bondi
New York Bar No. 4432738
1990 K Street, N.W., Suite 950
Washington, D.C. 20006
Tel: (202) 862-8910
bbondi@cahill.com

s/ Sara E. Ortiz
Sara E. Ortiz
New York Bar No. 5302070
32 Old Slip
New York, NY 10005
Tel: (212) 701-3368
sortiz@cahill.com
*Attorneys for CapWealth Advisors, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing is being filed via the Court's ECF system, which is expected to deliver a copy by electronic means to the following on this 14th day of February 2022:

M. Graham Loomis
Kristin W. Murnahan
Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E.,
Suite 900
Atlanta, GA 30326-1382
*Attorneys for Plaintiff*

                                                s/Eugene N. Bulso, Jr.
                                                Eugene N. Bulso, Jr.