# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 3:20-cv-01064 |
| CAPWEALTH ADVISERS, LLC, et al., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

The SEC brought this action against CapWealth Advisers, Timothy Pagliara, and Timothy Murphy ("Defendants") for alleged violations of the Investment Advisers Act of 1940 ("Advisers Act"). Both parties moved for summary judgment. (Doc. Nos. 50, 63). The Court will deny both motions because neither party has demonstrated the absence of genuine issues of material fact.

## I.   BACKGROUND

### A.   Defendants' Business Model

CapWealth Advisers ("CapWealth") is a registered investment advisory firm. CapWealth Investment Services ("CWIS") was a broker-dealer that CapWealth formerly used, including during the period between June 2015 and June 2018 (the "relevant period"). Mr. Pagliara and Mr. Murphy are investment advisor representatives for CapWealth. They also served as representatives for CWIS during the relevant period.

Throughout the relevant period, Defendants generated income, in part, from advisory fees. Advisory fees were paid by CapWealth's clients in return for CapWealth's investment advisory services. The fees were calculated as a percentage of the assets that CapWealth managed for each client. The percent would vary from client to client in some cases. For instance, clients whose

accounts required more work, or presented more challenging issues, could be subject to a higher percentage fee than other clients.

Another source of Defendants' income during the relevant period came from fees paid under Rule 12b-1 of the Investment Company Act of 1940 ("12b-1 fees"). 12b-1 fees are charged by certain mutual funds and are used to pay for shareholder services and fund distribution. Often, after mutual funds pay 12b-1 fees to the fund's distributor, the distributor then remits the fees to the broker-dealer that sells the mutual fund shares. Throughout the relevant period, CWIS received 12b-1 fees through such an arrangement and provided the fees to Defendants when Defendants invested clients' money in mutual fund share classes that incurred 12b-1 fees.

Defendants made Form ADV disclosures to the SEC during the relevant period. A Form ADV is a document investment advisers use to register with the SEC. They then file the form on an annual basis. Form ADV disclosures describe advisers' business practices, fees, and conflicts of interest, among other things. In the relevant period, Defendants' Form ADV included the following language:

> Most of the investment professionals of CapWealth are also registered with CWIS. It is not mandatory that clients open an account with CWIS. Compensation may be received by the principals of CapWealth when certain portfolio transactions are effected on behalf of investment advisory clients. Therefore, the principals of CapWealth may receive compensation as a result of acting in one or both capacities, including the receipt of 12b-1 distribution payments from certain funds.

Defendants' Form ADV also stated that Defendants' advisory fee could be discounted based on several factors. Form ADV disclosures are available to investment advisers' clients and the public in general.

B.     Procedural History

The SEC filed a complaint against Defendants for alleged violations of Sections 206(2) and 206(4) of the Advisers Act on December 11, 2020 ("Complaint") (Doc. No. 1). The gravamen

2

of the Complaint is that Defendants' receipt of 12b-1 fees during the relevant period created a conflict of interest that Defendants failed to adequately disclose to their clients. According to the SEC, mutual fund share classes that incur 12b-1 fees are less profitable than share classes that do not charge such fees. Yet Defendants' business model incentivized them to invest clients' funds in fee-bearing share classes even when no-fee classes—in the same mutual funds—were available. Among other things, the Complaint seeks disgorgement and a permanent injunction preventing further violations of federal securities laws.

Defendants dispute the Complaint's description of their business model. They aver that they eliminated any potential conflict of interest arising from their receipt of 12b-1 fees by providing advisory fee discounts to clients whose accounts incurred such fees. They also claim that, even if their fee strategies did create a conflict of interest, they adequately disclosed it through their Form ADV disclosures and the oral conversations they had with their clients.

Defendants moved to dismiss on February 11, 2021. (Doc. No. 14). The Court denied the motion. (Doc. No. 33). Both parties moved for summary judgment on January 31, 2022. (Doc. Nos. 50, 63). The motions have been fully briefed. (Doc. Nos. 52, 65, 76, 78, 82, 83).

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the [non-moving party]." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

At the summary judgment stage, the moving party "has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence

3

of a genuine dispute over material facts." Id. If the moving party meets its burden, "the nonmoving party, must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014).

When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the nonmoving party." Id. It must also accept the nonmoving party's evidence "as true" and "draw all reasonable inferences in [that party's] favor." Id. The Court "may not make credibility determinations nor weigh the evidence" in its analysis. Id. And although the Court "need consider only the cited materials," it "may consider other materials in the record" if it chooses. Fed. R. Civ. P. 56(c).

## III.    ANALYSIS

Both parties seek summary judgment concerning the SEC's claims that Defendants (1) violated Section 206(2) of the Advisers Act by failing to disclose material information about a conflict of interest to their clients; (2) violated Section 206(2) of the Advisers Act by failing to seek "best execution" for their clients' trades; and (3) violated Section 206(4) of the Advisers Act by failing to implement policies reasonably designed to prevent violations of federal securities laws. In addition, Defendants argue the Court should find that the SEC's claims for disgorgement and injunctive relief fail as a matter of law. The Court will deny all requests for summary disposition.

A.    <u>Neither Party Is Entitled to Summary Judgment Regarding the SEC's Claim that Defendants Violated Section 206(2) of the Advisers Act by Failing to Adequately Disclose a Material Conflict of Interest to Their Clients.</u>

"[T]o establish liability under Section 206(2), the Government must prove: '(1) the Defendant is an investment adviser; (2) the Defendant used the mails or any other means or

4

instrumentality of interstate commerce, directly or indirectly (3) to make a misstatement or omission of material fact to a client or prospective client; and (4) the Defendant acted negligently.'" SEC v. CapWealth Advisors, LLC, 550 F. Supp. 3d 548, 552 (M.D. Tenn. 2021) (quoting Morris v. Wachovia Secs., Inc., 277 F. Supp. 2d 622, 644 (E.D. Va. 2003)). The parties do not dispute the first two elements. (See Doc. Nos. 52, 65, 76, 78). And genuine issues of material fact remain regarding the second two elements. Hence, neither party is entitled to summary judgment.

1.    *The SEC Is Not Entitled to Summary Judgment Because It Has Not Demonstrated Defendants Made a Material Misstatement or Omission as a Matter of Law.*

Summary judgment in the SEC's favor is not warranted. To justify summary disposition, the SEC must, at minimum, demonstrate Defendants made a material misstatement or omission. CapWealth, 550 F. Supp. 3d at 552. It has not done so.

The SEC argues Defendants made a material omission by failing to adequately disclose a conflict of interest stemming from their receipt of 12b-1 fees.[1] (Doc. No. 65 at 12–21). Under the Advisers Act, a conflict of interest exists where investment advisers "might [be] incline[d] . . . to render advice which [is] not disinterested." See SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191–92 (1963). According to the SEC, Defendants' receipt of 12b-1 fees created a

---

[1] The SEC also devotes a small portion of its brief to arguing that Defendants made affirmative misrepresentations. First, it contends Mr. Murphy made misleading statements in select emails to individual clients. (Doc. No. 65 at 19). Whether these statements were in fact misleading will depend, in part, on the testimony Defendants present at trial regarding their oral disclosures to clients (and on whether a jury finds that testimony credible), as discussed further herein. Second, the SEC argues Defendants' Form ADV disclosures that stated "principals" of CapWealth may receive 12b-1 fees was misleading because Mr. Murphy was not a "principal" of CapWealth because he was not a "firm owner." (Id. at 16). However, according to a regulatory consultant deposed in this matter, "[i]n the securities field, a principal does not only refer to ownership, it refers to registration status." (Doc. No. 57 at 38).

5

conflict of interest because it gave Defendants an incentive to invest clients' funds in 12b-1 share classes even when doing so was detrimental to clients' interests. (Doc. No. 65 at 9). The SEC avers Defendants did not adequately disclose this conflict of interest. (Id. at 10).

The SEC's argument falls short because it is unclear Defendants had a conflict of interest to disclose. Mr. Pagliara testified at length in his deposition regarding clients who incurred 12b-1 fees during the relevant period. (Doc. No. 66 at 40–54). For those clients, he said, CapWealth employed one of two strategies. (See id. at 39–43). It either (1) provided advisory fee discounts to offset the 12b-1 fees or (2) kept the clients invested in funds charging 12b-1 fees in lieu of *raising* the clients' advisory fees. (Id.). CapWealth apparently reserved the second strategy for clients with challenging accounts that required extra work. (Id. at 40, 42–43). Such clients had to pay CapWealth more than other clients, whether through an advisory fee enhancement or through 12b-1 fees. (Id.). According to Mr. Pagliara, it was more tax efficient for those clients to pay 12b-1 fees compared to higher advisory fees. (Id. at 52 (discussing a hypothetical in which a taxpayer saves money by paying "deductible 12b-1 fees" versus "what would have been non-deductible as an advisory fee")). If the jury finds Mr. Pagliara's testimony is true, then Defendants had no conflict of interest. They would have received the same compensation regardless of the strategy they pursued—whether through 12b-1 fees or an enhanced advisory fee—and they simply chose the strategy most beneficial for each client.

The SEC has not rebutted Defendants' testimony. It has presented evidence that certain CapWealth clients who incurred 12b-1 fees were charged CapWealth's standard advisory fee. (Doc. No. 56 at 46). But it has not demonstrated that any one of them, in particular, did not benefit

from the tax efficiency strategy outlined by Mr. Pagliara in his deposition.[2]  The SEC's failure to highlight at least one such representative case undermines its request for summary judgment.

Reading the record in the light most favorable to Defendants, the SEC has not met the burden required of it to obtain summary disposition of its Section 206(2) claim premised on Defendants' alleged failure to disclose a conflict of interest.

> 2.      *Defendants Are Not Entitled to Summary Judgment Because Jury Questions Remain as to Each Disputed Element of the SEC's Section 206(2) Claim Based on Defendants' Alleged Conflict of Interest.*

Like the SEC, Defendants have not demonstrated summary judgment in their favor is appropriate.  In analyzing Defendants' motion for summary judgment, the Court must shift its perspective and view the record in the light most favorable to the SEC.  Laster, 746 F.3d at 726.  In that light, genuine issues of material fact remain regarding whether Defendants (1) made material misstatements or omissions and (2) did so negligently.

*First*, a jury question exists as to whether Defendants made material misstatements or omissions regarding their alleged conflict of interest.  As noted, Defendants contend that no conflict existed and that, even if a conflict did exist, they adequately disclosed it through their Form ADV disclosures and their oral conversations with clients.  (Doc. No. 78 at 6–13).  Defendants' argument that no conflict existed relies heavily on the credibility of their own testimony, see supra Section III.A.1, which is a matter for the jury to consider, Laster, 746 F.3d at 726 (a district court cannot "make credibility determinations . . . when determining whether an issue of fact remains for trial").  The same applies to Defendants' argument that if a conflict existed they adequately disclosed it.  True, Defendants' Form ADV stated Defendants "may" receive

---

[2] Notably, the SEC also has not shown any of these clients was not informed of the tax efficiency strategy (Mr. Pagliara testified that he explained it to "each and every" one of them).  (Doc. No. 66 at 42).

compensation from 12b-1 fees. (Doc. No. 57 at 35). But courts have held such statements, alone, are inadequate conflict disclosures where a defendant was, in fact, receiving the form of compensation in question. E.g., SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985) (holding that "a disclaimer that [an] investment advisor 'may' trade in recommended securities for its own account is itself a material misstatement" where "in fact" the adviser "invested in 25%, 10% and 10% of the publicly available stock of the companies he recommended"); SEC v. Westport Capital Markets LLC, 408 F. Supp. 3d 93, 104 (D. Conn. 2019) (defendants Westport and McClure did not "adequately disclose[] their conflicts of interest" where "Westport's Forms ADV warned clients that Westport and McClure *might* be deriving additional compensation from their trading activities on the clients' behalf" but "did not advise the clients that they were *actually* doing so"). For that reason, Defendants' testimony about their oral disclosures is key to this case. It is the role of the jury to hear that testimony and to determine its credibility. Laster, 746 F.3d at 726.

*Second*, if Defendants did make material misstatements or omissions about their alleged conflict of interest, a genuine dispute remains regarding whether they did so "negligently." CapWealth, 550 F. Supp. 3d at 552. "Negligence is the failure to exercise reasonable care under all the circumstances." Robare v. SEC, 922 F.3d 468, 477 (D.C. Cir. 2019) (citation and quotation omitted). "[I]ssues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." Daughenbaugh v. Bethlehem Steel Corp., 891 F.2d 1199, 1205 (6th Cir. 1989) (citation and quotation omitted); Reidinger v. Trans World Airlines, Inc., 463 F.2d 1017, 1021 (6th Cir. 1972) ("It is well settled that it is the rare negligence case that can be resolved by summary judgment."); McAdoo v. Wal-Mart Stores E., L.P., No. 3:15-CV-00917, 2017 WL 3581096, at *2 (M.D. Tenn. Aug. 18, 2017) ("This is not the rare negligence case where summary judgment is appropriate.").

This case is no exception. Defendants appear to argue they did not act negligently because they engaged a regulatory consultant, Howard Landers, to advise them regarding their Form ADV disclosures. (See Doc. No. 78 at 17). Mr. Landers works for 1st Bridgehouse Financial Group and has approximately 21 years of experience. (Doc. No. 57 at 4–5). Mr. Landers recommended the Form ADV language—stating Defendants "may" receive compensation from 12b-1 fees—that the SEC has targeted. (Id. at 35 ("[T]he word may made sense, because if we used the word shall or must, that would be a false statement, because that means that if that was in this disclosure . . . if we used the word shall, that means everyone across the table, all clients, would have to get some sort of a discount based upon 12b-1 fees.")). But Defendants' reliance on Mr. Landers does not automatically render their conduct reasonable. E.g., Robare, 922 F.3d at 478 ("[S]ubstantial evidence supports the Commission's finding that any reliance on [a consultant's] advice was objectively unreasonable because TRG and its principals knew of their fiduciary duty to fully and fairly disclose the potential conflicts arising from the payment arrangement with Fidelity, yet repeatedly failed to disclose the source and details of the conflicts."). And it does not make this case one of the "rare" ones in which summary disposition of a negligence question is appropriate. Reidinger, 463 F.2d at 1021.

The Court finds Defendants are not entitled to summary judgment concerning the SEC's Section 206(2) claim premised on Defendants' alleged failure to disclose a conflict of interest. A jury must determine whether Defendants made material misstatements or omissions and whether they did so negligently.

      B.    <u>Neither Party Is Entitled to Summary Judgment Regarding the SEC's Claim that Defendants Violated Section 206(2) of the Advisers Act by Failing to Seek Best Execution.</u>

The SEC also contends Defendants violated § 206(2) because they failed to seek "best

9

execution" for client transactions. (Doc. No. 65 at 23). "Under the duty of best execution, a fiduciary bears an obligation to seek the most favorable terms reasonably available under the circumstances." Malouf v. SEC, 933 F.3d 1248, 1264 (10th Cir. 2019) (citation and quotation omitted). The SEC contends that Defendants breached the duty of best execution because, in certain instances, they invested clients' funds in mutual fund share classes that incurred 12b-1 fees when share classes that did not incur such fees were available. (Doc. No. 65 at 23). But if Defendants' deposition testimony is true, then Defendants only invested clients in share classes incurring 12b-1 fees when doing so yielded a net financial benefit for the client. See supra Section III.A. Because a jury must determine the credibility of Defendants' testimony, neither party is entitled to summary judgment on this claim. (Id.).

C.      Neither Party Is Entitled to Summary Judgment Regarding the SEC's Claim that Defendants Violated Section 206(4) of the Advisers Act and Rule 206(4)-7 Promulgated Thereunder.

The SEC contends Defendants violated the requirements of Section 206(4) of the Advisers Act and Rule 206(4)-7 promulgated thereunder. (Doc. No. 65 at 26). Under those requirements, "each investment company and investment adviser [must] adopt and implement written policies and procedures reasonably designed to prevent violation of the federal securities laws." Compliance Programs of Investment Companies and Investment Advisers, 68 Fed. Reg. 74714-01. These policies must "take into consideration the nature of that firm's operations." Id. For instance, they should "identify conflicts and other compliance factors creating risk exposure for the firm and its clients . . . and then design policies and procedures that address those risks." Id. However, the policies need not "memorialize every action that must be taken in order to remain in compliance with the Advisers Act." Id. The SEC contends that Defendants failed to design policies that addressed their conflicts of interests and best execution failures. (Doc. No. 65 at 26–

29).  However, as previously discussed, genuine issues of material fact remain as to the existence of those conflicts and execution failures.  See supra Section III.A.  Hence, neither party is entitled to summary judgment regarding whether Defendants violated Section 206(4) and Rule 206(4)-7.

        D.        <u>Defendants Are Not Entitled to Summary Judgment on the SEC's Requests for Disgorgement and an Injunction.</u>

Defendants argue the Court should find that the SEC's claims for disgorgement and injunctive relief "fail for lack of evidence." (Doc. No. 52 at 12, 14).  The Court disagrees.

Summary judgment is not warranted on the SEC's claim for disgorgement.  As a general matter, the "decision whether to order disgorgement, and in what amount, is a fact intensive one that many courts suggest should be considered only after a finding of liability."  SEC v. Conaway, No. 2:05-CV-40263, 2009 WL 902063, at *19 (E.D. Mich. Mar. 31, 2009).  The Court sees no reason to stray from that practice in this case.  "In support of [a] disgorgement award, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains."  SEC v. Zada, 787 F.3d 375, 382 (6th Cir. 2015) (citation and quotation omitted).  Here, the SEC has produced an approximation of allegedly ill-gotten gains.  (Doc. No. 76 at 24–25 (summarizing evidence)).  The Court need not investigate this issue further until the fact-finding at trial is complete.

Similarly, the Court will not grant Defendants summary judgment as to the SEC's request for a permanent injunction.  In cases such as this, permanent injunctions may be appropriate where the SEC shows "a reasonable and substantial likelihood" that the defendant will violate securities laws in the future absent an injunction.  SEC v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 331–32 (6th Cir. 2013).  The likelihood of future violations depends on several factors, such as the "egregiousness" of past violations and "the degree of scienter involved."  SEC v. Quinlan, 373 F. App'x. 581, 585–86 (6th Cir. 2010).  For the reasons previously discussed, genuine disputes of

material fact remain regarding such factors.  Hence, the Court will not assess these factors until the fact-finding process at trial is complete.

## IV.     CONCLUSION

For the reasons set forth above, the Court will deny both parties' motions for summary judgment.  (Doc. Nos. 50, 63).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE