UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 3:20-cv-1064 ) |
| CAPWEALTH ADVISORS, LLC *et al.* | ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion and Order (Doc. Nos. 118, 119) entered August 3, 2022, the Court granted the Securities and Exchange Commission's ("SEC") Motion to Exclude at trial the expert testimony of Jonathan Macey, a professor of corporate law, finance, and securities at Yale University. Defendants have filed a Motion to Reconsider (Doc. No. 120) that ruling, to which the SEC has responded (Doc. No. 129) in opposition.

"[W]hile the Federal Rules of Civil Procedure do not expressly provide for motions to reconsider interlocutory orders, '[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.'" Asurion, LLC v. Squaretrade, Inc., No. 3:18-1306, 2019 WL 7421757, at *1 (M.D. Tenn. Oct. 15, 2019) (quoting Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir.2004)). "Courts traditionally will find justification for reconsidering interlocutory orders only when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir.2009).

Motions to reconsider are "extraordinary in nature," "discouraged," and "run contrary to notions of finality and repose[.]" Kalos v. White House Village, Inc., LLC, 2021 WL 1022752, *3 (M.D. Tenn. Mar. 17, 2021). Accordingly, district courts have "significant discretion" when considering such motion. Jones v. Westbrooks, No. 3:16-CV-02631, 2018 WL 3389730, at *4 (M.D. Tenn. July 11, 2018). Exercising that discretion here, Defendants' Motion will be denied because they have not carried their burden of showing that the Court erred with respect to any of the three opinions offered by Professor Macey.

As characterized by Defendants, "Professor Macey's first opinion states that investment advisers who reduce their advisory fee when pursuing higher fee share classes, as in this case, where the client could only pursue such a class or where it was advantageous to the client for tax reasons, negate any conflict of interest in the transaction on behalf of the adviser, and thus disclosure was immaterial." (Doc. No. 121 at 1). By concluding in its earlier Opinion that Professor Macey would not be permitted to declare what is "material," Defendants assert that the Court impermissibly conflated Rules 702 and 704 of the Federal Rules of Evidence "by finding that the term 'material' contained a legal conclusion and that it usurped the role of the jury." (Doc. No. 121 at 3). According to Defendants, this was improper because Rule 704 specifically provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

"'Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses,'" and "[a]lthough expert testimony may 'embrace an ultimate issue,' it may not 'define legal terms' or state 'impermissible legal conclusions.'" United States v. Mazumder, 800 F. App'x 392, 395 (6th Cir. 2020) (citations omitted). Indeed, the Sixth Circuit has "consistently recognized that 'opinions phrased in terms of inadequately explored legal criteria' should be excluded from

2

evidence." United States v. Safa, 484 F.3d 818, 821 (6th Cir. 2007). "Explained differently, 'if the [witness] expresses an opinion using legal terms that follow the statutes . . . , it is more likely to be held that the [witness] is giving a legal conclusion. In contrast, . . . testimony that uses words that do not have specialized legal meaning is more likely to be admissible.'" Id. (citation omitted).

The Court stands by its earlier conclusion because Professor Macey simply accepts Defendants' factual assertions and applies the law of materiality to those facts as he interprets it. Suggesting something is or is not material has legal connotations. See, Safa 484 F.3d at 821 ("The defendant is correct in contending that witness testimony would improperly invade the province of the court to explain the applicable law to the jury if a witness were permitted to define 'materiality.'"). True, neither the statute nor the jointly-submitted proposed jury instructions include or define "material," but this hardly means that Professor Macey's use of the word "material" is not intended to be anything other than a declaration that Defendant's did not violate the Investment Advisors Act based solely on their own representations. This problem is only underscored by his being a law professor with no experience as an investment adviser.

Professor Macey's opinion is not saved by characterizing the proffered testimony as being of assistance to the jury in understanding conflicts of interests under the Act. While it may be true that investment advisers can negate a conflict of interest by reducing their advisory fees, Professor Macey did not review any client documents that would demonstrate such discounts were given to offset 12b-1 fees. Rather, he relies on Defendants' statements that they did in fact offset such fees. "An expert witness must testify to his own opinions and 'may not parrot' the opinions of others or be their 'mouthpiece.'" Gott v. Neuman & Esser USA, Inc., No. 1:19-CV-4, 2020 WL 7014222, at *5 (E.D. Tenn. Aug. 14, 2020) (quoting In re Whirlpool Corp. Front-Loading Washer Prod. Liab.

3

Litig., 45 F. Supp. 3d 724, 741 (N.D. Ohio 2014); see also, Tipton v. CSX Transportation, Inc., No. 3:15-CV-311-TAV-CCS, 2018 WL 4904954, at *2 (E.D. Tenn. Jan. 2, 2018) ("While Rule 703 permits an expert to rely on facts or data that the expert has been made aware of, it does not permit an expert to merely parrot another's opinions, to which the expert is not qualified to render."). Things might well be different if Professor Macey "only assume[d] the facts which defendant allege for purposes of his analysis," (Doc. No. 121 at 4), but his report hardly reads that way. See e.g., Doc. No. 81-1 at 8-9) (stating, among other things, that Professor Macey made assumptions because "the record indicates").

Defendants also seek reconsideration of the exclusion of Professor Macey's second opinion, to wit, that "the SEC has long taken a practical, sensible, holistic approach to disclosure" that "appropriate disclosures were made in [a] variety of ways" and "any decision to insist that disclosure is only proper and appropriate if it is contained in Form ADV is inconsistent with long-standing SEC disclosure policies that provide significant benefits to investors." (Doc. No. 121 at 8). They argue that "it would benefit the Court to break this opinion up into multiple aspects: one part discussing the SEC's longstanding holistic approach to disclosures and one part discussing the adequacy of the disclosures." (Id.).

Broken up or not, the Court stands by its earlier ruling: Professor Macey's opinion that Defendants' disclosures were adequate is not helpful to the jury when all the opinion does is tell the jury how to decide the case. "The jury, being a cross-section of society, is better positioned to determine how an ordinary investor would understand Defendants' disclosures than is an expert in securities regulation." SEC v. Ambassador Advisors, LLC, 576 F. Supp.3d 250, 259 (ED Pa. 2021). As for the SEC's historically "holistic approach to disclosure," what was in Defendants' minds is

4

what is relevant, not the SEC's (or Professor Macey's for that matter) and, hence, "Professor Macey may not offer an opinion as to how the jury should evaluate the disclosure documents in this case." Id. "After all, in this case the jury is tasked with determining how an ordinary investor would have understood Defendants' disclosures." Id.

Finally with respect to Professor Macey's third opinion, Defendant's submit that this, too, can be "broken down into two parts: one part opining that the best execution standard does not apply in 12b-1 fees context and one part opining that to the extent it did apply, providing clients the most favorable terms commercially available complied with the standard." (Doc. No. 121 at 11). One part or two, this argument fails to consider that this Court has previously observed in this very case that "[t]he fiduciary duty that encompasses a duty to disclose also includes a duty of best execution." Sec. & Exch. Comm'n v. CapWealth Advisors, LLC, 550 F. Supp. 3d 548, 553 (M.D. Tenn. 2021) (citing Malouf v Sec. & Exch. Comm'n, 933 F.3d 1248, 1265 (10th Cir. 2019)).[1] If it is improper for an expert witness to generally state a legal conclusion as an opinion, see Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 317 (6th Cir. 2019) (collecting cases), it is certainly improper for him or her to provide the jury an incorrect statement of the law. Moreover, and once again, Professor Macey's opinion that Defendants reduced their standard compensation to offset 12b-1 fees is based on nothing but their say-so, with no effort made by Professor Macey to verify those assertions.

In short, none of the limited circumstances that would allow the Court to reconsider its ruling are present here. There is no clear error of law, no newly discovered evidence, no intervening change

---

[1] As a point of clarification, "the duty of loyalty subsumes the duty of best execution." Malouf, 933 F.3d at 1265. Consequently, it does not necessarily follow that the SEC is entitled to a separate "Best Execution" instruction as requested in its separately filed Proposed Instructions. (Doc. No. 103 at 5).

5

in controlling law, and no need to prevent manifest injustice. Accordingly, and for the foregoing reasons, Defendant's Motion to Reconsider (Doc. No. 120) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE